UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE LEE MONROE,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:20-cv-01508-SKO<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT KILOLO KIJAKAZI AND AGAINST PLAINTIFF |

## I.  INTRODUCTION

On October 26, 2020, Plaintiff Jennie Lee Monroe ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  (Doc. 1.)   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

/////

/////

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted as Defendant in this suit.

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 10.)

1

## II.     BACKGROUND

On July 24, 2018, Plaintiff filed an application for DIB under Title II of the Act, alleging she became disabled on October 17, 2016. (Administrative Record ("AR") 169.)  She alleges she became disabled due to a combination of physical and mental impairments, including arthritis in the back and hands, sciatica, degenerative disc disease, herniated discs, chronic pain, asthma, tennis elbow, carpal tunnel syndrome, and dizzy spells. (AR 186.)  Plaintiff was born on April 28, 1971, and was 45 years old as of the alleged onset date. (AR 169.)  Plaintiff completed the 10th grade, and she worked as a fast food/convenience store cashier from 1986 to October 17, 2016. (AR 188.)

### A.     Relevant Medical Evidence[3]

#### 1.     Satish Sharma, MD

On October 11, 2018, Dr. Satish Sharma performed a consultative physical examination of Plaintiff. (AR 459.)  Dr. Sharma reviewed her medical records and noted an MRI scan of the lumbosacral spine performed in February 2017 which showed degenerative disc disease of L1-2 and L5-S1. (AR 459.) No disc hernia or spinal stenosis was indicated. (AR 459.) Dr. Sharma further noted that Plaintiff had received epidural steroid injections for back pain in February 2018. (AR 459.)

Dr. Sharma noted that Plaintiff was complaining of low back pain, pain in both hands and wrists, numbness and tingling in her fingers, asthma, dizziness, right shoulder pain, bilateral elbow pain, anxiety, and PTSD. (AR 459.)  Dr. Sharma indicated the following findings of concern: tenderness to palpation of the left shoulder; pain on abduction and rotation of the right shoulder; tenderness to palpation of both elbows; tenderness to palpation of lumbar spine and in the paravertebral region; pain on forward flexion and extension of back; positive findings of Tinel's sign at both wrists; decreased sensation to pinprick of fingers in both hands; pain with toe to heel walking; and occasional walk with a limp. (AR 461.)  He also observed the following normal findings: lower extremities had full range of motion; no tenderness to palpation of the cervical spine; full range of motion of cervical spine; no muscle spasms; negative result of straight leg raising test; muscle power

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

of 5/5 in both upper and lower extremities; occasional normal gait; and no need for assistive devices to walk. (AR 461.)

Dr. Sharma diagnosed Plaintiff with low back pain with intermittent radicular pain in lower extremities, tenderness and decreased range of motion of lumbar spine but no radiculopathy, bronchial asthma, bilateral carpal tunnel syndrome, bilateral elbow pain secondary to lateral epicondylitis, dizziness secondary to vertigo, right shoulder pain secondary to tendonitis, anxiety, and PTSD. (AR 462.) Dr. Sharma opined that Plaintiff could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently; walk, stand, and/or sit 6 hours out of an 8 hour workday with appropriate breaks; occasional bending and stooping; limitations to reaching overhead above the shoulder with right arm to occasionally; and limitations in holding, feeling and fingering objects with both hands to frequently. (AR 462.)

### 2. Ryan Gunton, PhD

On October 29, 2018, Dr. Gunton, a licensed psychologist, performed a comprehensive consultative psychiatric evaluation of Plaintiff. (AR 464.) Plaintiff presented in an anxious manner, appeared to be exaggerating her description of symptoms at times, made good eye contact, and made normal facial expressions. (AR 464.) Plaintiff appeared to have no issue with gross or fine motor abilities and she was observed to ambulate without assistance. (AR 464.) Plaintiff reported experiencing episodes of panic attacks every day and that she would not leave her house due to getting dizzy and confused. (AR 464.) Plaintiff stated she isolates because she is afraid of people. (AR 464.) Although Plaintiff shared that she had some significant childhood trauma, Dr. Gunton opined that she did not appear to meet the criteria for PTSD. (AR 465.) Plaintiff stated she was often depressed and struggles to stay focused. (AR 465.) Plaintiff stated she was taking psychotropic medication to treat her mental health symptoms, but she was not participating in mental health therapy or treatment at the time. (AR 465.)

Plaintiff reported that she normally spends the day taking care of her animals, interacting with her husband, and doing some chores. (AR 466.) She reported being able to do basic chores without difficulty. (AR 466.) She stated that her engagement in social relationships is negatively impacted by her mental health symptoms. (AR 466.)

Dr. Gunton opined that Plaintiff's affect was congruent with mood and within normal limits, her thought process and thought content were normal, she was alert and oriented, her intellectual functioning appeared to be within the average range, her concentration and attention were good, and she appeared to have adequate insight. (AR 469-70.) Dr. Gunton opined that Plaintiff was mildly limited in adequately performing complex tasks, not significantly limited in accepting instructions from supervisors or in interacting with coworkers and customers, mildly limited in performing basic work activities, mildly limited in regular attendance, and mild to moderately limited in handling normal work related stress in a competitive work environment. (AR 467.)

### 3. E. Wong, MD

On October 24, 2018, Dr. E. Wong, a state agency medical consultant, reviewed the medical evidence and provided a prior administrative medical finding (PAMF). (AR 72-75.) Dr. Wong concurred with Dr. Sharma's findings, noting limitations to occasionally reaching overhead with the left extremity, and handling with both hands due to carpal tunnel syndrome. (AR 74.)

### 4. A. Pan, MD

On February 20, 2019, Dr. Pan, a state agency medical consultant, also reviewed the medical evidence and provided a PAMF. (AR 88.) Dr. Pan's PAMF concurred with Dr. Wong's. (AR 86-89.)

### 5. Barry Olson, PhD

On January 24, 2019, Plaintiff began seeking mental health treatment with Dr. Olson, which included eight sessions. (AR 547.) Plaintiff presented with complaints of severe anxiety and panic attacks, chronic back pain, and a history of abuse and trauma. (AR 547.) She stated she is happily married and gets her primary support from her husband. (AR 547.) She indicated that she had been in prior counseling, which was helpful. (AR 547.) She stated she organized a self-help group involving supporting people who needed to learn to take care of themselves. (AR 547.) She indicated she was currently overwhelmed by stress and pain and sought support with Dr. Olson to more effectively address those problems. (AR 547-49.)

### 6. Graciela Barzaga, MD

On October 7, 2019, Dr. Graciela Barzaga conducted a panel qualified medical evaluation of Plaintiff. (AR 515.) Plaintiff presented with complaints of low back pain with pain in the elbow and

hip due to overcompensation. (AR 516.)  Plaintiff described her back pain at 6/10, characterized as constant, moderately to severe, and aggravated by prolonged standing and walking, and doing household chores. (AR 517.)  Dr. Barzaga noted Plaintiff's current treatment included: Neurontin, Ranitidine for heart burn, Naprosyn for pain, Zoloft for panic anxiety attacks, and Zanaflex for muscle relaxing. (AR 517.)  Dr. Barzaga noted that Plaintiff had received three sets of epidural injections, but only the second and third set provided some relief. (AR 517.)  She also previously completed 12 sessions of water therapy, which gave her temporary relief. (AR 517.)

Dr. Barzaga examined Plaintiff's lumbar spine and determined that she had a slightly antalgic gait, paralumbar muscle tenderness, and muscle guarding. (AR 521.) However, Dr. Barzaga noted normal lordosis, no swelling, no edema, no sacroiliac tenderness, no Patrick's sign, and found that Plaintiff could do 100 degrees bilateral straight leg raising, supine and sitting. (AR 521.)  Dr. Barzaga further noted right elbow tenderness but full range of motion, left wrist tenderness but due to a recent fall at home, and strength of 5/5 in both lower extremities. (AR 521.)  Dr. Barzaga diagnosed Plaintiff with chronic lumbosacral strain and lumbar spinal stenosis. (AR 538.)  Dr. Barzaga concluded that Plaintiff should be considered "industrial." (AR 539.)  Dr. Barzaga further opined that her condition was not permanent and stationary because she had inadequate rehabilitation. (AR 539.)  Dr. Barzaga recommended that Plaintiff avoid prolonged standing, walking, and lifting more than 20 pounds. (AR 539.)

B.    Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB on November 5, 2018. (AR 77.)  Plaintiff's application was denied again on reconsideration on February 20, 2019. (AR 91.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  At a hearing held on February 25, 2020, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 32-60.)  On April 1, 2020, the ALJ determined that Plaintiff was not disabled insofar as she could perform her past relevant work. (AR 27.)

C.    The ALJ's Decision

In her decision dated April 1, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §

416.920. (AR 17-21.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 17, 2016, the alleged onset date (step one). (AR 17.)  At step two, the ALJ found Plaintiff's following impairments to be severe: mild lumbar degenerative disc disease and facet arthropathy, left sciatica, right lateral epicondylitis, asthma, vertigo, and obesity.  (AR 18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. See 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b), except she is able to climb ramps and stairs frequently; she cannot climb ladders, ropes or scaffolds. She is able to balance, kneel, crouch and crawl frequently and to stoop occasionally. The claimant is able to handle and finger frequently, bilaterally. She cannot tolerate concentrated exposure to pulmonary irritants, such as dusts, gases, fumes and pollens. She must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts..

(AR 20.)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, to the extent they are inconsistent with the above residual functional capacity assessment, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 26.)

At step 4, the ALJ determined that Plaintiff was capable of performing past relevant work as a Customer Service Representative, Cashier II, or Fast Foods Service Management Trainee. (AR 27.) Ultimately, the ALJ concluded that Plaintiff was not disabled because Plaintiff's past work does not require the performance of work-related activities precluded by her residual functional capacity (step 5). (AR 27.)

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on August 26, 2020. (AR 1.)  The ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

/////

## III.   LEGAL STANDARD

### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); see also 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC]...to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the

Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citing Swenson, 876 F.2d at 687).

### B.    Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

### A.    Mental Health Impairments

Plaintiff alleges that the ALJ erred in determining Plaintiff's mental health impairments were not severe.  She further claims that the ALJ improperly rejected critical aspects of the medical opinions.

"[A]n impairment is not severe if it does not significantly limit [the claimant's] ... ability to do basic work activities." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)).  "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985).  Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" Smolen, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); cf. Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding

that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" Webb, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28). Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." Cookson v. Comm'r of Soc. Sec., No. 2:12–cv– 2542–CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); see, e.g., Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.").

The ALJ reasonably determined that Plaintiff's "mental impairments of depression and anxiety, considered singly and in combination, do not cause more that minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR 18.) In arriving at this determination, the ALJ found that Plaintiff had no limitation in understanding, remembering or applying information. (AR 19.) The ALJ noted that Plaintiff routinely "prepares dinner, vacuums, and car[e]s for pets"; "[s]he does not need special reminders to take care of personal needs or grooming"; and "[s]he does not need to be reminded to go places." (AR 19.) The ALJ found that Plaintiff had a mild limitation in interacting with others. (AR 19.) The ALJ noted Plaintiff "can go out alone," her hobbies include "going to events"; she spends time with others every day, including her son, brother and friends; she shops in public stores; and she has no problems getting along with family, friends, neighbors, or others. (AR 19.) The ALJ found Plaintiff also had a mild limitation in concentrating, persisting or maintaining pace. (AR 19.) The ALJ noted that Plaintiff utilized a computer for activities such as shopping and maintained a savings account. (AR 19.) The ALJ also noted that an examiner had found that Plaintiff had "good" concentration. (AR 24.) Finally, the ALJ determined that Plaintiff had mild limitation in adapting or managing oneself. (AR 19.) In support, the ALJ noted that Plaintiff maintained a normal routine of doing chores around the house, socializing, shopping, banking, running a self-help group, and caring for animals. (AR 19, 24-26.) The ALJ found

that the evidence of mental impairments, either singly or in combination, did not indicate more than a minimal limitation in Plaintiff's ability to do basic work activities.

The ALJ also found that Plaintiff's record of mental health treatment was limited and conservative. Plaintiff complained of anxiety, daily panic attacks, PTSD, and depression. (AR 24.) The ALJ noted that Plaintiff had a history of suicide attempts and being psychiatrically hospitalized. (AR 24.) The ALJ also noted that Dr. Gunton had determined that Plaintiff appeared to exaggerate her symptoms at times. (AR 24.) Specifically, Plaintiff advised Dr. Gunton that as of October 2018, she was not participating in mental health therapy or other mental health treatment, with the exception of taking psychotropic medications—which she had been taking off and on since age 23. (AR 24, 465.) Dr. Gunton diagnosed Plaintiff with unspecified anxiety disorder. (AR 24.) Dr. Gunton determined that Plaintiff had mild limitations in her abilities to perform complex tasks, perform basic work activities, be self-conscious, maintain regular attendance and complete a normal workday or workweek. (AR 24.) Dr. Gunton also found that Plaintiff was "mildly to moderately" limited in her ability to handle everyday stress. (AR 24.)

The ALJ determined that Dr. Gunton's opinion was persuasive, except regarding her ability to handle normal work stress. (AR 25.) The ALJ found Dr. Gunton's opinion, to the extent her ability was moderately limited, was unsupported by the medical evidence, the examiner's own findings, and other evidence including "little in the way of mental health treatment." (AR 25.) The ALJ noted there were no complaints or mentions of stress during the relevant period, other than Plaintiff's visit with a psychologist in January 2019. (AR 25.) Plaintiff did not seek mental health treatment until 2019, and even during that time, Plaintiff created a "self-help" group to teach others how to care for themselves. (AR 547-49.) Thus, the ALJ properly considered the two main factors of supportability and consistency in evaluating Dr. Gunton's opinion. See 20 C.F.R. § 404.1520c(b)(2).

In sum, substantial evidence supported the ALJ's finding that Plaintiff's mental health impairments were non-severe.

B.     Carpal Tunnel Syndrome and Left Arm Impairment

Plaintiff further claims that the ALJ erred in finding her carpal tunnel syndrome to be non-severe. She claims the ALJ improperly discounted the opinions of Dr. Sharma, Dr. Wong, and Dr.

Pan. Defendant contends that the ALJ's finding was supported by substantial evidence, and that the ALJ properly relied on the opinions of Dr. Sharma and Dr. Barzaga.

Here, the ALJ reasonably determined that carpal tunnel syndrome was not a medically determinable impairment. The ALJ noted that the medical evidence of record contained no record of complaints or treatment for carpal tunnel syndrome. (AR 20.) To qualify as an impairment, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Even so, the ALJ incorporated limitations to frequent handling and fingering into the RFC.

As noted by Defendant, there was only one diagnosis of carpal tunnel syndrome in the record, which was during Dr. Sharma's examination of Plaintiff. (AR 461.) Dr. Sharma noted that Tinel's sign was positive at both wrists, and sensations to pinpricks in the thumb, index and middle fingers of both hands were decreased. (AR 461.) Contrary to Plaintiff's claim, however, Dr. Sharma opined that holding, feeling, and fingering objects with both the hands were limited to "frequently." (AR 462.) The ALJ found this opinion persuasive because it is supported by objective medical testing, Dr. Sharma's own consultative evaluation findings, and consistent with other evidence in the file. (AR 23.) The ALJ found the state reviewing doctors' opinions that Plaintiff's handling and feeling limitations should be limited to "occasionally" were unpersuasive because they were unsupported and inconsistent with the record. (AR 25.) Their PAMFs were based on Dr. Sharma's consultative examination, yet they were inconsistent with his opinion that Plaintiff was capable of frequent handling. (AR 462.) The ALJ reasonably rejected their opinions in favor of Dr. Sharma's opinion because Dr. Sharma conducted the actual examination, and Dr. Wong and Dr. Pan only reviewed Dr. Sharma's report. The ALJ also found the absence of any hand complaints to treating physicians, testing, and treatment to be significant. (AR 25.) The lack of complaints, treatment or testing lends support to the ALJ's finding that Plaintiff's carpal tunnel syndrome was not an incapacitating or debilitating condition. Dr. Barzaga also opined that Plaintiff's use of her hands should be limited to frequently. (AR 25.) The ALJ found this opinion persuasive because it was consistent with the medical evidence, including Dr. Sharma's opinion. (AR 25.)

Plaintiff also claims the ALJ failed to explain why Dr. Wong and Dr. Pan's PAMFs for occasional left arm overhead reaching and handling was overly restrictive. The ALJ did in fact

explain his finding, and determined that the opinion was unsupported and inconsistent with the record. (AR 25.) Although Plaintiff had shoulder injury in the past, it was to her right shoulder, and there was no record of left shoulder complaints. (AR 25.) Thus, the ALJ did not err in evaluating the medical opinions in formulating the RFC with respect to carpal tunnel syndrome or left shoulder impairment.

In sum, the ALJ properly considered the supportability and consistency of each medical opinion. Even if the ALJ had erred, any error was harmless, because the ALJ incorporated the limitation of "frequent" as to handling and fingering by both hands. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)) (Courts "may not reverse an ALJ's decision on account of an error that is harmless.")

### C. Symptomology Evidence

Plaintiff contends that the ALJ improperly rejected her symptomology testimony. She alleges the ALJ failed to provide clear and convincing reasons to find Plaintiff not credible. Plaintiff claims the ALJ cited the objective medical evidence generally as being inconsistent with the degree of impairment alleged, but did not identify specific aspects of Plaintiff's testimony which are actually inconsistent with any specific portion of the medical record. Defendant counters that the ALJ properly evaluated Plaintiff's testimony and provided clear reasons supported by substantial evidence for discounting Plaintiff's testimony.

In evaluating the credibility of a claimant's testimony regarding her impairments, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. Id. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

13

> prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

Tommasetti, 533 F.3d at 1039 (citations and internal quotation marks omitted); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26.) However, the ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 26.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  See Vasquez, 572 F.3d at 591.

Here, the ALJ found Plaintiff's credibility was reduced by several factors: 1) [D]espite impairment, Plaintiff has engaged in a somewhat normal level of daily activity and interaction"; and 2) Plaintiff's "allegations regarding the severity of symptoms and limitations [are] diminished because those allegations are greater than expected in light of the objective evidence of record." (AR 26.) With respect to the ALJ's reasoning that the objective evidence of record did not support Plaintiff's allegations regarding the severity of symptoms, the ALJ found that the medical evidence established

that Plaintiff's impairments caused mild limitations in functioning that did not preclude all substantial gainful activity. (AR 21.)  The ALJ noted that Plaintiff had a history of low back pain; however, physical examinations showed normal range of motion, normal neurological signs, 5/5 strength throughout, intact sensation, ability to perform heel to toe stand and tandem gait, and no swelling or deformities. (AR 21-22.)  The ALJ noted that an MRI revealed degenerative disc disease, but no hernia or stenosis. (AR 22.)  Straight leg raising was negative, no muscle spasms were noted and Plaintiff had full range of motion in the cervical spine. (AR 23.) There was no evidence of radiculopathy. (AR 23.)  Thus, the ALJ provided substantial support by setting forth notable medical findings that were inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms. The Court finds that the ALJ properly considered inconsistency with the objective medical evidence as a "clear and convincing" reason to discount Plaintiff's credibility. See Salas v. Colvin, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

The ALJ next found Plaintiff's allegations of debilitating pain less persuasive because of her conservative treatment. Although Plaintiff complained of debilitating and severe pain, she sought no treatment. (AR 20, 26.)  The ALJ noted that treatment was generally on a conservative, outpatient basis in the form of ongoing medication management by her primary care physician. (AR 22, 25.) MRI and examination findings did not indicate a need for surgical intervention or medical care beyond physical therapy and pain management. (AR 21-22.)

Similarly, Plaintiff complained of debilitating mental health issues, but the ALJ noted the record reflected that Plaintiff did not seek any mental health treatment prior to January 2019, and even that was limited to several visits. (AR 19.)  Plaintiff alleged debilitating panic attacks occurring daily; however, Plaintiff brought these allegations only once in October 2018, and again in January 2019. (AR 19.)  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (plaintiff's "testimony of depression and fatigue" discounted "because she did not seek any treatment or evaluation . . . . At times, she has been given psychotropic medication, . . . [but] she has not received care from a mental health practitioner").

The ALJ further found Plaintiff's testimony less persuasive due to her daily activities, which were inconsistent with claims of severe debilitation. (AR 19-21.)  It is appropriate for an ALJ to

consider a claimant's activities that undermine claims of severe limitations in making the credibility determination. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. Fair, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113.

Plaintiff alleges an inability to work due to back pain, carpal tunnel syndrome, inability to leave the house without her husband due to anxiety, daily panic attacks, depression, and PTSD. (AR 24.) In evaluating Plaintiff's credibility, however, the ALJ cited activities that were inconsistent with Plaintiff's testimony about the severity of her symptoms and impairments. The ALJ observed that, despite Plaintiff's alleged severe limitations caused by her pain and mental health symptoms, Plaintiff takes care of her animals, maintains socialization with friends and family, completes basic chores around the house without difficulty such as preparing dinner and vacuuming, shops in public stores and online, manages finances, and leads a self-help group. (AR 21-26, 547.) The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be inconsistent with her alleged inability to work due to her pain and other symptoms. (AR 26.) Even if some of these activities do not rise to the level of transferable work skills, they are, as a whole, inconsistent with allegations of completely debilitating impairment. Molina, 674 F.3d at 1113. Accordingly, the inconsistencies between Plaintiff's activity level and her complaints constituted a clear and convincing reason to find Plaintiff's testimony less credible. See 20 C.F.R. § 416.929(c)(3); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir.1999) (claimant's ability to fix meals, do

laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

In summary, the medical evidence of record, conservative course of treatment, and activities of daily life constituted substantial evidence to support the ALJ's decision to find Plaintiff's symptomology evidence inconsistent with the presence of an incapacitating or debilitating condition.

### D. Lay Opinion Testimony

Plaintiff contends the ALJ improperly rejected the lay witness testimony of Plaintiff's husband, Gregory Monroe, by failing to provide specific and legitimate reasons.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. § 416.913(a)(4). Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition. See Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Nevertheless, under the revised regulations, the ALJ is not required to articulate how he considered Mr. Monroe's testimony. See 20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section").

The ALJ considered the lay opinion testimony from Mr. Monroe and found it to be persuasive as to Plaintiff's day-to-day activities; however, the ALJ found his testimony to be unpersuasive as to the extent of Plaintiff's functional limitations. (AR 25-26.) The ALJ determined that his testimony was inconsistent and unsupported by the medical evidence. (AR 26.) Inconsistency with the medical record is a proper reason for discounting lay witness testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

### E. Vocational Expert

Plaintiff contends the ALJ failed to ask the vocational expert a hypothetical that accounted for all of her limitations, i.e., her occasional limitations in handling, reaching and fingering, and her moderate limitations in coping with work-related stress. As Defendant correctly contends, however, those limitations were not part of the RFC as determined by the ALJ.

As previously discussed, the ALJ did not find a limitation of "occasional" with respect to handling, reaching and fingering. Dr. Sharma and Dr. Barzaga both opined Plaintiff's capacity to handle, reach, and finger using both hands should be limited to "frequently," and the ALJ found their opinions persuasive. (AR 462, 25.) The ALJ found the opinions of Dr. Wong and Dr. Pan unpersuasive because they relied on Dr. Sharma's examination but were inconsistent with Dr. Sharma's findings.

The ALJ also did not find a "moderate" limitation with respect to Plaintiff's ability to deal with work-related stress. As discussed above, the ALJ found that Dr. Gunton's opinion, to the extent that Plaintiff's ability was moderately limited, was unsupported and inconsistent with the medical evidence, the examiner's own findings, and other evidence. (AR 25.) Thus, the hypothetical posed to the VE contained all of the limitations the ALJ found credible and supported by substantial evidence in the record. Bayliss, 427 F.3d at 1217-18 (citing Magallanes v. Bowen, 881 F.2d 747, 756–57 (9th Cir.1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record)).

## V.      CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff, Jennie Monroe.

IT IS SO ORDERED.

Dated:   **June 3, 2022**                             /s/ *Sheila K. Oberto*
                                                                                UNITED STATES MAGISTRATE JUDGE